IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANICE McAULIFFE, as Executor for the Estate of Walter McAuliffe, <br><br> Plaintiff, <br><br> v. <br><br> MICROPORT ORTHOPEDICS, INC., a Delaware corporation, BIOMET ORTHOPEDICS, LLC, BIOMET, INC., BIOMET U.S. RECONSTRUCTION, LLC, BIOMET MANUFACTURING, LLC f/k/a BIOMET MANUFACTURING CORP., ZIMMER, INC., and ZIMMER BIOMET HOLDINGS, INC., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) No. 20 C 7322 <br><br> Judge John Z. Lee |

## MEMORANDUM OPINION AND ORDER

Following a left hip replacement in October 2016, Walter McAuliffe developed metallosis, or metal poisoning, caused by dangerous levels of cobalt being released from each of the implant's two components: a femoral head (*i.e.*, a ball) manufactured by MicroPort Orthopedics, Inc. ("MicroPort"); and an acetabular revision system (*i.e.*, a socket) manufactured by Zimmer, Inc. ("Zimmer"). Walter filed this action against MicroPort and Zimmer (as well as other Zimmer entities) shortly before passing away for apparently unrelated reasons, after which his surviving spouse, Janice McAuliffe, took over as Plaintiff. Before the Court is MicroPort's motion to dismiss Counts III through VI of Janice's amended complaint for failure to state a claim. For the reasons set forth below, the motion is granted in part and denied in part.

I. **Background**[*]

Walter received a total replacement of his left hip from Dr. Tad Gerlinger at Rush University Medical Center in Chicago, Illinois on October 14, 2016. Am. Compl. ¶¶ 7–8, ECF No. 39. The hip implant consisted of two components that form a ball-and-socket prosthetic joint: a MicroPort femoral head made of cobalt chromium and a Zimmer Trebecular Metal Acetabular Revision System. *Id.* ¶¶ 9–10. Water relied on Dr. Gerlinger to recommend these particular components. *Id.* ¶¶ 11–12.

Following the surgery, the MicroPort and Zimmer metal components began to poison Walter by releasing dangerous amounts of cobalt into his body. *Id.* ¶¶ 14–16, 19. Walter subsequently developed metallosis, or more specifically cobalt toxicity, a type of metal poisoning. *Id.* ¶¶ 17–19. As a result of these injuries, Walter had to undergo a second invasive surgery on November 19, 2018, to revise the implants. *Id.* ¶ 20. Ultimately, Janice attributes Walter's injuries to defects in each component of the metal-on-metal hip prosthesis that he received. *Id.* ¶ 27.

Walter filed this action in state court in late 2020, raising six counts: (I) strict products liability design and manufacturing defect; (II) negligent design and manufacture; (III) strict products liability failure to warn; (IV) negligent failure to warn; (V) breach of implied warranties; and (VI) fraudulent concealment. After the action was removed to federal court based on diversity jurisdiction, MicroPort moved to dismiss Counts III through VI for failure to state a claim. *See* Def. MicroPort's

---

[*] The following well-pleaded factual allegations are accepted as true for purposes of the motion to dismiss.

2

Mot. Dismiss Counts III–VI, ECF No. 19. As for the Zimmer entities, they have since been voluntarily dismissed. *See* 8/23/21 Min. Entry, ECF No. 44.

Walter passed away soon thereafter. His wife, Janice, then moved to substitute herself as party plaintiff under Federal Rule of Civil Procedure 25(a) and filed the operative amended complaint under the Illinois Survival Act, 755 Ill. Comp. Stat. 5/27-6. Because the amended complaint is substantively identical to its predecessor, MicroPort has elected to stand on its motion to dismiss.

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard "is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (cleaned up).

When considering a motion to dismiss, courts accept "all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). At the same time, courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Iqbal*, 556 U.S. at 678.

3

### III. <u>Analysis</u>

MicroPort moves to dismiss the complaint's claims of failure to warn (Counts III and IV), breach of an implied warranty of fitness for a particular purpose (Count V), and fraudulent concealment (Count VI). The Court addresses each claim or group of claims in turn.

### A. Failure to Warn (Counts III and IV)

MicroPort moves to dismiss Counts III and IV for a variety of reasons. It first argues that Janice fails to plead that the medical community did not already know about the risk of metallosis associated with metal-on-metal hip implants. In Illinois, "a manufacturer's duty to warn physicians is limited and does not extend to risks already known to the medical community." *Aquino v. C.R. Bard, Inc.*, 413 F. Supp. 3d 770, 790 (N.D. Ill. 2019) (citing *Hansen v. Baxter Healthcare Corp.*, 764 N.E.2d 35, 42 (Ill. 2002)). Here, however, the complaint is silent as to the medical community's knowledge. Although Janice contends that risks associated with metal-on-metal hip implants "were not those of the type generally ascertained or known by the public or to Decedent," she does not mention the medical community. Am. Compl. ¶ 24. Accordingly, MicroPort's motion to dismiss Counts III and IV is granted on this basis.

At the same time, the Court rejects MicroPort's other arguments for dismissing these counts. MicroPort leans on the learned intermediary doctrine, which provides that "a manufacturer has no duty to warn patients of the risks of . . . medical products so long as it provides sufficient warnings to the physician." *Aquino*, 413 F. Supp. 3d at 789. But MicroPort overlooks Janice's allegations that it failed to warn *both* Walter

4

*and* Dr. Gerlinger of the risks of metallosis. Compl. ¶¶ 58, 79. Relying on *Grzanecki v. Smith and Nephew, Inc.*, MicroPort also complains that Janice "does not allege any specifics regarding [its] warnings, beyond the conclusory allegation that the warnings issued were insufficient." *See* No. 18 C 204, 2018 WL 2297452, at *2 (N.D. Ill. May 30, 2019). But the Court fails to see what specifics Janice could have alleged about warnings that she contends were never given. In other words, whatever warnings MicroPort gave, Janice alleges that they failed to disclose the risk of metallosis associated with metal-on-metal hip implants. *See* Am. Compl. ¶¶ 46–49. That is specific enough to state a claim that MicroPort's warnings, to the extent it had a duty to provide them, were deficient.

B.  **Breach of Implied Warranty of Fitness for a Particular Purpose (Count V)**

MicroPort next moves to dismiss Count V on the grounds that Janice fails to allege the existence of an implied warranty of fitness for a particular purpose. An implied warranty that goods "shall be fit" for a particular purpose is made when, at the time of contracting, the seller "has reason to know any particular purpose for which the goods are required." 810 Ill. Comp. Stat. 5/2-315. Conversely, no warranty of fitness for a particular purpose is made when "the intended use is no different from the ordinary use of the product." *Rosenstern v. Allergan, Inc.*, 987 F. Supp. 2d 795, 804 (N.D. Ill. 2013). And, here, Janice makes clear the Walter used MicroPort's femoral head for its intended purpose. *See* Compl. ¶¶ 25, 33 ("The subject metal on metal hip system was in a defective condition that made it unreasonably dangerous and unsafe for its intended purpose and use by ordinary users, including [Walter]

5

. . . ."); *see also id.* ¶¶ 68–70.  Therefore, the Court dismisses Count V to the extent it alleges breach of an implied warranty of fitness for a particular purpose.

That said, the Court also reads Count V to allege that MicroPort breached an implied warranty of merchantability, which warrants that merchantable goods shall be "fit for the ordinary purpose for which the goods are used." *Corwin v. Conn. Valley Arms, Inc.*, 74 F. Supp. 3d 883, 891 (N.D. Ill. 2014) (quoting 810 Ill. Comp. Stat. 5/2–314(2)(c)); *see* Am. Compl. ¶ 71.  MicroPort makes no argument for dismissing this claim.  Accordingly, the Court allows Count V to proceed to the extent it is based upon MicroPort's breach of an implied warranty of merchantability.

## C.  Fraudulent Concealment (Count VI)

Finally, MicroPort moves to dismiss Count VI for failure to allege the elements of fraudulent concealment.  To plead such a claim under Illinois law, a plaintiff must allege: "(1) the concealment of a material fact; (2) that the concealment was intended to induce a false belief, under circumstances creating a duty to speak; (3) that the innocent party could not have discovered the truth through a reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and relied upon the silence as a representation that the fact did not exist; (4) that the concealed information was such that the injured party would have acted differently had he been aware of it; and (5) that reliance by the person from whom the fact was concealed led to his injury." *Trs. of AFTRA Health Fund v. Biondi*, 303 F.3d 765, 777 (7th Cir. 2002) (citing *Schrager v. N. Cmty. Bank*, 767 N.E.2d 376, 384 (Ill. App. Ct. 2002)).  In addition, Federal Rule of Civil Procedure 9(b) requires a party alleging

6

fraud to state the circumstances "with particularity." Fed. R. Civ. P. 9(b). "This means the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

MicroPort first contends that Count VI improperly attributes the alleged concealment to Defendants collectively. MicroPort is correct. In fraudulent concealment cases involving multiple defendants, "the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994). Here, by contrast, Count VI refers to "Defendants" altogether, without specifying any particular Defendant's involvement. *See* Compl. ¶¶ 76–89, 83, 85. The heightened pleading standard of Rule 9(b) requires more. *See Vicom, Inc.*, 20 F.3d at 778.

MicroPort also argues that the complaint fails to satisfy Rule 9(b) by neglecting to specify the when, where, and how of the alleged fraudulent concealment. The Court agrees with MicroPort on this point as well. Although Janice's allegations of inadequate warnings would have been sufficient to survive under Rule 12(b)(6), as noted above, Rule 9(b) requires more to adequately allege fraud. *See Vicom, Inc.*, 20 F.3d at 778.

Janice counters that Count VI is sufficient by drawing an analogy to *Carlen v. Coloplast Corp.*, No. 19 C 1304, 2020 WL 3050752 (S.D. Ill. June 8, 2020). *Carlen*, however, is distinguishable. There, the plaintiff provided the when, where, and how by alleging that the information in question should have been provided "via a public medium," sometime "during marketing and advertising, prior to Carlen's surgery,

and throughout the time period when the mesh products were implanted in her." *Id.* at \*7. Janice's complaint contains no such detail. Instead, it alleges only that "Defendants failed to disclose . . . important facts" regarding "their hip implant component parts" to Walter and Dr. Gerlinger. Am. Compl. ¶¶ 77, 79. In her response brief, Janice adds that the disclosures should have occurred "prior to the marketing and sale of the product, prior to Plaintiff's surgery and when the product was implanted in Plaintiff." Pl.'s Resp. Opp'n Def. MicroPort's Mot. Dismiss at 5, ECF No. 26. But these details do not appear in the paragraphs of the complaint to which Janice cites. *See* Am. Compl. ¶¶ 70–79. As a result, Janice's allegations do not specify the what, when, where, and how as required by Rule 9(b).

On top of these arguments, MicroPort identifies two more deficiencies in Count VI. First, Janice fails to allege that "the innocent party could not have discovered the truth" about the risk of metallosis associated with metal-on-metal hip implants systems "through a reasonable inquiry or inspection." *See Trs. of AFTRA Health Fund*, 303 F.3d at 777. Second, Janice fails to plead that Walter reasonably relied on MicroPort's alleged concealment of these risks. She does allege that Walter reasonably relied on Dr. Gerlinger's recommendations in receiving a hip implant, but nowhere does she contend that Walter (or Dr. Gerlinger for that matter) reasonably relied on MicroPort's alleged misrepresentations or nondisclosures.

Thus, because Janice fails to specify MicroPort's role in the alleged fraud, fails to plead the circumstances of the alleged fraud with particularity, and fails to allege other essential elements of her fraud claim, the Court dismisses Count VI.

8

## IV. Conclusion

For the reasons set forth above, MicroPort's motion to dismiss Counts III through VI of the amended complaint is granted in part and denied in part. Counts III, IV, and VI are dismissed. Count V is dismissed insofar as it alleges breach of an implied warranty of fitness for a particular purpose, but may proceed on the theory that MicroPort breached an implied warranty of merchantability. To the extent Janice can cure the defects identified in this order, she may move for leave to file a second amended complaint (with the proposed complaint as an attachment) no later than October 4, 2021.

**IT IS SO ORDERED.**  **ENTERED: 9/2/21**

_____
**John Z. Lee
United States District Judge**